**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3377-23

MARCIA HARRIS,

    Plaintiff-Appellant,

v.

NEWARK BOARD OF EDUCATION
and DARLEEN GEARHART,

    Defendants-Respondents,

and

CHRISTOPHER CONSTANTINO,

    Defendant.

_____

Submitted March 25, 2026 – Decided May 18, 2026

Before Judges Paganelli, Vanek and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-8549-19.

Ionno & Higbee Attorneys at Law, LLC, attorneys for appellant (Robert D. Novicke, Jr., Sebastian B. Ionno, and D. Rebecca Higbee, on the briefs).

Lite DePalma Greenberg & Afanador LLC, attorneys for respondents (Victor A. Afanador and Nicholas R. McClelland, on the brief).

PER CURIAM

Plaintiff Marcia Harris appeals from a May 23, 2024 order granting summary judgment in favor of defendants the Newark Board of Education (the Board) and Darleen Gearhart, dismissing her second amended complaint alleging harassment based on race, hostile work environment and retaliation in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, and the Conscientious Employees Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. We affirm, substantially for the reasons set forth in Judge L. Grace Spencer's forty-three-page written decision.

## I.

Because we write for the parties and Judge Spencer's comprehensive written decision fully detailed the factual record viewed in the light most favorable to plaintiff, we summarize only the most pertinent facts for context of this opinion. See R. 4:46-2(c); Christakos v. Boyadjis, 262 N.J. 447, 462 (2026). Plaintiff began her employment with the Board in September 2013 as a pre-kindergarten (pre-K) teacher at Sussex Avenue Renew School (Sussex Avenue) while Gearhart was the principal, Christopher Constantino was vice principal,

2

Kathy Duke-Jackson was assistant superintendent of schools, and Roger León was superintendent. Gearhart was Constantino's supervisor. Plaintiff stated teachers at Sussex Avenue with expertise in art or drama are referred to as "preps."

The Board had policies and procedures strictly prohibiting workplace harassment, retaliation, and discrimination. Employees had bi-annual anti-discrimination training.

In August 2017, plaintiff and Constantino exchanged emails regarding the scheduling of preps in plaintiff's classroom when the pre-K students were napping. Plaintiff believed it was not "best practice" for a prep to be the classroom teacher while the students were sleeping and asserted the New Jersey Department of Education, Division of Early Childhood Education (the DOE) considered it developmentally inappropriate.

At the beginning of the 2017-2018 school year, plaintiff left an aide in charge of her pre-K classroom during naptime in order to accompany an upset parent to meet with Gearhart. When plaintiff returned to her classroom, Constantino questioned her absence and allegedly screamed at her from five inches away. Fearing Constantino, plaintiff left her classroom to talk to Gearhart about what had happened.

The same day, Constantino issued plaintiff a Letter of Warning/Neglect of Duty because she left her classroom for almost thirty minutes and a Letter of Warning/Insubordination, addressing plaintiff's refusal to comply with his request for her to return to the classroom.

In January 2018, plaintiff discovered her daughter was being bullied at school and requested approval to leave work early to address the issue. Constantino refused to approve plaintiff's initial request because he would have to assign another teacher to cover her classroom on short notice. Constantino then advised plaintiff that if she left at 1:00 p.m. she had to take half of a personal day. Because she was told she had to take half a day, plaintiff decided to leave at 12:10 p.m.

Later that month, Constantino issued three additional warning letters to plaintiff: (1) a Letter of Warning/Neglect of Duty; (2) a Letter of Warning/Insubordination; and (3) a Letter of Warning/Conduct Unbecoming. The letters were issued because plaintiff impermissibly left her classroom for a total of twenty minutes in violation of Sussex Avenue's work schedule, refused to return to her classroom for approximately ten minutes after Constantino directed her to do so, and purportedly "attempted to manipulate the Chief Innovation Office via untruthful messages in order to gain early dismissal from

work."  All three letters warned there was exposure for further disciplinary action.

On January 24, 2018, plaintiff filed a complaint with the Newark Public Schools Office of Affirmative Action (OAA) and an investigation proceeded. Plaintiff received another Letter of Warning/Neglect of Duty from Constantino for failing to supervise her pre-K students.  The following day, Constantino issued yet another warning letter to plaintiff, stating she failed to supervise her pre-K students for "several minutes" for the third time during the 2017-2018 school year.  Plaintiff explained she took her students to the auditorium for dismissal and left the aide with the children while she went to the office to make a copy of a doctor's note for a parent.  On February 15, 2018, plaintiff filed a second OAA complaint and alleged Constantino "continue[d] to write up false allegations" after she filed her first OAA complaint.

In May 2018, plaintiff verbally complained to Gearhart that kindergarten teacher, Claudia Savan, said the word "n[*****]" during their conversation at Sussex Avenue.  Gearhart reported the incident to her supervisor and spoke with Savan, who admitted to using the word during a private conversation with plaintiff.  Gearhart stated she did not discipline Savan because she made the comment without a "negative" connotation to plaintiff during a private

5

conversation. Gearhart found the verbal warning to Savan had been "effective" because there was "no repeat instance" of the complained-of conduct.

During the same month, plaintiff sought to have her pre-K students sing the "Black National Anthem, Lift Every Voice and Sing" during Sussex Avenue's "Moving-Up Ceremony" (the Ceremony) as they had done in previous years. Gearhart told plaintiff the Black National Anthem could be performed as a "class presentation" but could not be sung during the Ceremony. Gearhart did not approve performance of the Black National Anthem because "she did an investigation and determined that the song had a high level of controversy." Gearhart learned of the controversy from Board employees, Kimberly Fortune and Savan.

On May 29, 2018, plaintiff complained to the OAA about Gearhart's decision to not permit the singing of the Black National Anthem. During the first week of June 2018, Gearhart and plaintiff exchanged emails discussing the issue. Gearhart emailed plaintiff stating one class could perform the song as an "artistic expression," but not at the Ceremony. Three days later, plaintiff met with Gearhart to discuss the issue and left the meeting believing the dispute had been resolved. Plaintiff understood that Gearhart had approved the song to be performed as a class presentation at the Ceremony, with one class leading the

performance and other classes invited to join in.

The pre-K students sang the Black National Anthem at the Ceremony. When plaintiff returned to her classroom after the Ceremony, she received an email from Gearhart "threatening insubordination." Gearhart expressed her displeasure the anthem was performed when plaintiff went to Gerhart's office to discuss the email. A few days later, Gearhart texted plaintiff and offered to discuss the situation the following week because she felt the exchange between them ended "on a bad note." Plaintiff declined to do so.

On June 28, 2018, the OAA concluded the letters Constantino issued to plaintiff should "be expunged from plaintiff's file" because he did not employ "progressive discipline."

During the beginning of the 2018-2019 school year, plaintiff emailed the OAA informing them her students still received a scheduled prep during naptime and asked for an update on her complaints.

On September 28, 2018, Constantino and plaintiff had a dispute regarding the manner in which plaintiff's students were leaving the auditorium. Plaintiff emailed the OAA, Gearhart and other officials about the dispute and again sought an update of her January 24, 2018 and February 15, 2018 complaints.

Afterward, plaintiff alleged Constantino "aggressively charged into

7

plaintiff's classroom and said, '[a]re you ready to rumble?'" Plaintiff also stated that "Constantino did not say anything else except to tell plaintiff to leave her attendance sheet outside the door as he was exiting the classroom." When plaintiff sent an email complaining about this interaction, Gearhart responded it was improper for plaintiff to be emailing while she was supposed to be working and informed plaintiff that Constantino had entered her classroom to collect the attendance sheet. Gearhart stated Constantino often used the phrase "are you ready to rumble?" to mean "get started with something." Plaintiff believed there was no policy prohibiting emailing during working hours.

Constantino took a four-month leave of absence after the September 28, 2018 exchange. On October 1, 2018, plaintiff filed a "discrimination/harassment complaint" against Constantino regarding the September 28, 2018 exchange. The Board hired outside counsel to assist the OAA's investigation. Duke-Jackson emailed Gearhart and the OAA informing them there was an outside investigation commenced and stating Constantino was not to have any contact with plaintiff or supervise plaintiff while the investigation was ongoing.

On October 2, 2018, Gearhart issued plaintiff another Letter of Warning/Insubordination. The letter stated plaintiff had used her district email

during instructional time when she was supposed to be teaching, and plaintiff was insubordinate when she removed the pre-K students from her classroom on two separate occasions to take them to Sussex Avenue's Music Lab and to the playground outside of scheduled activity times. The next day, plaintiff emailed Duke-Jackson, complaining about Gearhart. About a week later, plaintiff complained to Duke-Jackson about Gearhart's denial of her request to take pre-K students on a field trip to Terhune Orchards.

On November 8, 2018, the OAA sent letters to Constantino and plaintiff advising plaintiff's January 24, 2018 complaint against Constantino for retaliation was substantiated and closed with a "Finding." The investigation concluded: plaintiff had been subject to retaliatory harassment and plaintiff's one-half sick day for January 23, 2018, should be restored because plaintiff worked at least half of the day; the January 25, 2018 write-ups were to be removed from plaintiff's file; and Constantino should be trained on progressive discipline and communication with staff. A few days later, the OAA sent letters to Constantino and plaintiff advising them of its conclusion plaintiff had not been discriminated against or harassed based on a protected class and the investigation was being closed with a "No Finding" designation.

On January 18, 2019, Constantino returned from leave and plaintiff

emailed the OAA to request guidelines to ensure her safety. At her deposition, plaintiff testified her and Gearhart's relationship improved after they went over safety measures, including limited contact between plaintiff and Constantino. Constantino was directed not to enter a classroom where plaintiff was located.

During the beginning of February 2019, Constantino allegedly harassed plaintiff when he came into her classroom and "shuffled around the papers on her desk." Plaintiff did not formally report the incident.

In May 2019, plaintiff told Gearhart she submitted a complaint to Duke-Jackson alleging the staff-to-child ratio for her students was unlawful because she was not provided with a classroom aide. Gearhart acknowledged the shortage in staff and sought to provide plaintiff with as much assistance as possible, including speaking with her supervisors and the DOE "at least three times that week" to obtain another classroom aide.

About one month later, plaintiff filed a "Discrimination/Harassment Complaint" against Gearhart alleging she was retaliated against for filing an affirmative action complaint. Plaintiff alleged Gearhart retaliated against her by stating "untruths" in plaintiff's 2018-2019 Annual Evaluation form, specifically the sections regarding "competency."

Gearhart assigned plaintiff to teach first grade at Sussex Avenue for the

10

2019-2020 school year. Gearhart stated "that each year, it is the principal's prerogative 'to assign teachers according to their subject [and], according to their certification.'" Duke-Jackson supported the transfer. Gearhart explained she had moved a first-grade teacher to teach pre-K students at the same time she moved plaintiff to first grade, and believed the switch would be a better fit for both plaintiff and the other teacher. Although plaintiff's grade-level transfer did not impact her rank or compensation, she contended the transfer was retaliatory.

Duke-Jackson and León then sought to have either plaintiff or Constantino voluntarily transfer to a new school, but both rejected the request. Nevertheless, Constantino was transferred from Sussex Avenue to another school. León believed plaintiff needed a "fresh start" and transferred her to a new school for the 2020-2021 school year, over her objection. Gearhart no longer worked at Sussex Avenue at the time plaintiff was transferred.

Plaintiff went to a psychiatrist and spoke with her family members about the emotional distress she alleged defendants caused. Plaintiff asserted she also visited the nurse at Sussex Avenue because of Constantino's January 23, 2018 actions.

Plaintiff filed a Law Division complaint on November 19, 2019, followed by two amended complaints. The parties agreed to voluntarily dismiss their

claims against Constantino. After discovery was concluded, the Board and Gearhart moved for summary judgment. Judge Spencer granted defendants' motion and entered an order accompanied by a forty-three-page written decision.

On appeal, plaintiff argues the judge misapplied the summary judgment standard and erred in granting summary judgment to defendants based on prevailing law. She contends the trial judge improperly concluded Savan's and Gearhart's conduct was not severe and pervasive as required to sustain a hostile work environment claim. Plaintiff also asserts the judge erred in dismissing her retaliation claim and concluding she had waived her CEPA claim. We disagree.

## II.

We review a trial court's grant of summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). "We accord no special deference to the trial court's legal conclusions." Birmingham v. Travelers N.J. Ins. Co., 475 N.J. Super. 246, 255 (App. Div. 2023).

A summary-judgment motion should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a

12

matter of law." R. 4:46-2(c). A court should grant summary judgment when "'the evidence "is so one-sided that [the moving] party must prevail as a matter of law."'" Rios v. Media Pharm, Inc., 247 N.J. 1, 13 (2021) (quoting Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 257 (2018)).

III.

Based on our de novo review of plaintiff's contentions in light of the applicable law and the motion record, we affirm substantially for the reasons expressed in Judge Spencer's well-reasoned written decision. We add only the following remarks.

The Supreme Court's holding in Shepherd v. Hunterdon Developmental Center, 174 N.J. 1, 24 (2002), provides the four-part test a plaintiff must meet to establish a cause of action under the LAD. A plaintiff must show the alleged conduct: "(1) would not have occurred but for the employee's protected status[] and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." Ibid. "Severe or pervasive" conduct is determined by considering "whether a reasonable person would believe that the conditions of employment have been altered and that the working environment

is hostile." Therefore, the second through fourth prongs are somewhat "interdependent." Ibid.

Although the parties did not contest that plaintiff satisfied the first Shepherd prong, the judge found plaintiff failed to meet the second through fourth factors by showing "severe or pervasive" conduct altered the terms of her employment. The judge relied on well-settled case law, framing the relevant inquiry here as "whether a reasonable African-American would believe the alleged harassing conduct has created a hostile work environment."

We are satisfied the judge properly concluded the record did not demonstrate severe and pervasive conduct sufficient to satisfy this second prong. As the judge found, Gearhart's decision not to allow pre-K students to sing the Black National Anthem is the only "racial remark" in the record, and the single use of the word "n[*****]" by plaintiff's coworker during a private conversation with her is neither attributable to Gearhart nor the Board. See Godfrey v. Princeton Theological Seminary, 196 N.J. 178, 196-99 (2008) (recounting and applying the severe and pervasive conduct prong). We discern no error in the judge's finding that Gearhart's exchange with plaintiff about the singing of the Black National Anthem did not amount to severe and pervasive harassment based on race, especially because the students ultimately performed the song.

14

It is beyond doubt the racial epithet used by plaintiff's co-worker in a private conversation was reprehensible. However, the utterance here is unlike those instances in which a single use of a racial epithet has been found sufficient to establish the second prong of the Shepherd test because plaintiff does not allege the co-worker's statement was directed to her or was about her. In Taylor v. Metzger, our Supreme Court acknowledged how "one incident of harassing conduct can create a hostile work environment." 152 N.J. 490, 499 (1998). The Court made clear, however, that although "a single incident, if severe enough, can establish a prima facie case of a hostile work environment," such a case is "rare and extreme." Id. at 500 (quoting Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04 (1993)). Indeed, "'epithets or comments which are "merely offensive"' will not establish a hostile work environment claim." El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 176 (App. Div. 2005) (quoting Heitzman v. Monmouth Cnty., 321 N.J. Super. 133, 147 (App. Div. 1999)), aff'd in part, rev'd in part on other grounds, 174 N.J. 1 (2002).

We conclude that plaintiff has failed to make a prima facie showing of "'severe or pervasive' conduct . . . that would 'make a reasonable [person] believe that the conditions of employment are altered and [that the] working environment is hostile.'" Cutler v. Dorn, 196 N.J. 419, 440 (2008) (alterations

15

in original) (quoting Lehmann, 132 N.J. at 604). Viewing the totality of the circumstances plaintiff avers and providing all favorable inferences, she has failed to make a prima facie showing of a hostile work environment. Cf. Taylor, 152 N.J. at 502-06 (1998) (finding the single utterance of a racial epithet by the plaintiff's supervisor was sufficient to be severe and pervasive when said to the plaintiff and about her); Cutler, 196 N.J. at 440 (2008) (finding discriminatory remarks directed to and about plaintiff satisfied the second prong of the Shepherd test).

We are also unpersuaded the judge erred in finding plaintiff failed to establish she was subject to any adverse employment action under the LAD, reasoning plaintiff failed to demonstrate how Gearhart's evaluation reduced her wages or status and how her transfer from pre-K to first grade or to another school constituted a demotion. Employers cannot retaliate against employees who seek to enforce the LAD. N.J.S.A. 10:5-12(d). To establish a prima facie case of retaliation under the LAD, a plaintiff must show, among other requirements, they were subjected to an adverse employment decision by the defendant. Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 548-49 (App. Div. 1995). We have held a negative employment evaluation or a job reassignment, unaccompanied by a tangible detriment, such as a salary

A-3377-23

reduction or job transfer, is insufficient to rise to the level of an adverse employment action. El-Sioufi, 382 N.J. Super. at 176. Because plaintiff does not allege adverse employment action, her retaliation claim fails.

Under N.J.S.A. 34:19-8, an action filed under CEPA is "deemed a waiver of the rights and remedies available" pursuant to any state statute or decisional law. See also Young v. Schering Corp., 141 N.J. 16, 29 (1995). Although plaintiff agrees the CEPA waiver provision bars her retaliation claims from proceeding simultaneously under both the LAD and CEPA, she argues it was premature to force her to make an election between the two. Plaintiff argues our decision in Maw v. Advanced Clinical Communications, Inc., 359 N.J. Super. 420, 440-41 (App. Div. 2003), rev'd on other grounds, 179 N.J. 439 (2004), supports the argument she was permitted to wait until the end of discovery or until a pretrial conference under Rule 4:25-1 to make this election. However, we discern no error in the judge's question regarding whether plaintiff was pursuing her claims under the LAD instead of under CEPA at the oral argument of the summary judgment motion. Plaintiff had a meaningful opportunity to gather facts and choose her remedy through information developed during discovery—which concluded almost two years prior to the oral argument at which she made the election.

Because there was no material factual issue regarding liability under the LAD, plaintiff's punitive damages claim was properly dismissed. Even affording plaintiff all reasonable inferences, the record does not demonstrate a basis for punitive damages predicated on willful indifference or egregious conduct. See Rendine v. Pantzer, 141 N.J. 292, 314 (1995).

Based on our de novo review of the record, we are unconvinced the judge improvidently granted summary judgment because plaintiff failed to satisfy the well-established standards governing CEPA and LAD claims.

Any arguments we have not addressed, including plaintiff's allegations of aiding and abetting liability, lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

18

A-3377-23